

John M. "Jake" Krattiger
Direct Line: (405) 568-3301
*jkrattiger@gablelaw.com*

BOK Park Plaza
499 W. Sheridan Avenue
Suite 2200
Oklahoma City, OK  73102-7101
Telephone (405) 235-5500
Fax (405) 235-2875
*www.gablelaw.com*

June 15, 2026

Joshua C. Greenhaw
MEE HAWKINS GREENHAW COTNER PLLP
50 Penn Place
1900 NW Expressway, Suite 1400
Oklahoma City, OK 73118

> Re: YSA Investments 1 LLC's Demand for Immediate Control of First United Bank Deposit Accounts — Kulick-Owned Entities

Mr. Greenhaw,

As you know from our previous correspondence, we represent YSA Investments 1 LLC ("YSA") which, pursuant to applicable loan documents, has recorded mortgages (the "Mortgages") against properties owned by Marc Kulick, or entities owned by Mr. Kulick, as identified in our letter to First United Bank dated January 29, 2026 (the "Subject Properties"). In addition, YSA has recorded UCC-1 financing statements against the Kulick-owned entities to perfect its security interests in collateral pledged under the same loan documents. The Mortgages and UCC-1s evidence YSA's enforceable rights in the Subject Properties, collateral, accounts, proceeds, and other personal property of the Kulick-owned entities, and First United Bank is on notice that YSA asserts a perfected and enforceable interest in that collateral. For your convenience, attached is a copy of my letter to First United Bank dated January 29, 2026.

In that prior letter and related communications, First United Bank was notified that (i) Mr. Kulick and entities owned by Mr. Kulick had defaulted on their obligation to repay loans owed to YSA, and (ii) YSA made demand that First United Bank recognize and honor YSA's rights in the Subject Properties and related rents, accounts, and proceeds arising from the Mortgages and related loan documents. This included a demand that First United Bank take the steps necessary to prevent further dissipation of collateral and to recognize YSA's rights under the Mortgages, including the assignments of rents and related security interests.

Since that time, the Delaware Court of Chancery has entered its Post-Trial Memorandum Opinion and judgment in C.A. No. 2025-1319-KSJM, styled *Marc Kulick et al. v. YSA Investments*

*1 LLC* (the "Judgment"), confirming that YSA validly exercised its rights to record the Mortgages against the Subject Properties, and rejecting the challenges asserted by Mr. Kulick and the related entities regarding purported limitations on YSA's ability to enforce its rights through the Mortgages, UCC-1s, and any other method deemed necessary to YSA to protect its interests. A copy of the Judgment is enclosed with this letter. I encourage you to review the Judgment for yourself, but will summarize the key rulings below.

The Chancery Court's Judgment clearly affirms the validity and broad authority granted by Mr. Kulick to YSA in the loan documents that require compliance with YSA's demand for First United Bank to provide YSA with control of the identified collateral. First, the Court affirmed the enforceability of the Collateral Pledge and Security Agreement ("CSPA") that included a broad Power of Attorney ("POA") provision applicable in the event of a default. (Judgment at pp. 5-6, 29-30). In relevant part, the POA states:

> Through exercise of this irrevocable power of attorney, Lender may take whatever steps that it deems necessary in its sole discretion to secure and protect its interests, including but not limited to filing any action and doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to Lender. This shall include but not be limited to taking any action against any of the Collateral or any real or personal property owned by the Collateral.

(*Id*. at 29). The Court also held that Mr. Kulick signed a Joinder binding him personally, and any entity in which Mr. Kulick had an ownership or controlling interest, to the terms of the CPSA and POA. (*Id*. at 27).

The Court's Judgment clearly supports YSA's construction of the POA as providing YSA the right to control the collateral through any means YSA deems necessary. In the Court's own language:

> The first sentence of this provision gives YSA the right to "take whatever steps that it deems necessary in its sole discretion to secure and protect its interests." This expressly includes "doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to Lender." This power is not tied to or limited by the definition of Collateral. The second sentence does reference "taking action against the Collateral" but as a non-exclusive right. It reads: "This shall include *but not be limited to* taking any action against any of the Collateral. . . ." By defining "action against the Collateral" as a non-exclusive right encompassed by the preceding sentence, the language and structure of the Power of Attorney indicate that the parties intended for YSA's rights to extend beyond the right to take "action against the Collateral."

> Eliminating all doubt, the Power of Attorney provision uses the word "secure." It gives YSA the right to take "whatever steps that it deems necessary in its sole discretion to *secure* and protect its interests[.]," including "whatever . . . is necessary to . . . collect all amounts due" to YSA. The Power of Attorney thus grants YSA the right, if YSA deems it necessary, to "secure" its interests against

those entities bound by the Joinder, including the Title Owners, to facilitate payment of amounts due to YSA. YSA deemed the second mortgages necessary to protect its rights to collect amounts due to it. Plaintiffs do not argue otherwise.

(*Id*. at pp. 30-31).

Given the Judgment, First United Bank's immediate compliance with this demand is necessary to protect YSA (and the bank) against ongoing transactions by Kulick that may be fraudulent in nature. The Court heard directly from Mr. Kulick and also expert witness testimony from American Fiduciary Services (AFS) that demonstrated Mr. Kulick had engaged in significant self-dealing and commingling of funds to cover expenses from other entities in the real estate portfolio. The Court accepted this testimony from Mr. Kulick and AFS in rendering its Judgment:

> Kulick explained that 32 of Vesta's 34 properties routinely need cash, and his solution was to have Vesta make a loan to the cash-strapped property, to allow the property to get their reserve funded, and then subsequently pay back to the loan to Vesta. Trial Tr. at 115:7–116:18 (Kulick). Kulick acknowledged comingling his personal funds with Vesta's to create a "lending pool" to move cash around to pay the debts of one property with proceeds from another. Trial Tr. at 128:15–18, 129:9–13, 131:6–22 (Kulick). YSA's forensic accountant confirmed as much, based on his limited review of Kulick's bank accounts. JX-198; JX-194 ("In summary, from November 2024-July 2025 $33.2 million was deposited from the associated real estate portfolio of Vesta and from the net operational flows of the Vesta accounts, and these $33.2 million were comingled and sent to unidentified entities controlled by the controller.

*Id.* at 17, n. 107. As First United Bank is surely aware, given that it is a party to certain litigation and likely monitoring Mr. Kulick's ongoing affairs, Mr. Kulick and his companies have been subjected to dozens of lawsuits regarding mismanagement of the Subject Properties and failure to pay loans to other parties. Mr. Kulick's continued access to funds at First United Bank is not only contradicted by the Court's Judgment, but a risk to First United Bank if funds continue to be used improperly. As the Court found, the amount owed by Mr. Kulick on the loans to YSA exceeds $921 million (Judgment at p. 14).

Based on the Chancery Court's Judgment, YSA's prior demands made to First United Bank, including YSA's January 29, 2026, letter, and YSA's perfected security interests, YSA hereby renews its demand that First United Bank immediately:

(a) Identify all deposit accounts, rents, proceeds, and other funds held by or through First United Bank that relate to, or derive from, any of the Subject Properties or the Kulick-owned entities, and provide a current accounting of those funds to YSA.

(b) Provide to the undersigned copies of all account agreements, signature cards, deposit account control documentation, and other banking documents relating to accounts maintained for the Subject Properties or the Kulick-owned entities.

(c) Immediately cease permitting any withdrawals, transfers, disbursements, or other movement of funds from accounts related to the Subject Properties or the Kulick-owned entities to Marc Kulick, the Kulick-owned entities, and/or their current or prior managers, officers, employees, or agents, and cancel or place a stop on any pending transaction.

(d) Immediately cease providing account information, balances, statements, or other information regarding such accounts or funds to Marc Kulick, the Kulick-owned entities, and/or their current or prior managers, officers, employees, or agents, except as otherwise required by law.

(e) For all such accounts and collateral, immediately revoke all existing authorities, rights of access, signing authorities, and online credentials associated with Marc Kulick, the Kulick-owned entities, and/or their current or prior managers, officers, employees, or agents.

(f) Establish and confirm YSA's exclusive control over the identified accounts, proceeds, and related collateral by:

  i.   Recognizing the following as the sole authorized representative(s) regarding the identified accounts, proceeds, and collateral:

       Authorized Representative: Aharon Diveroli, Manager.

  ii.  Providing new online access credentials and administrator rights to the Authorized Representative(s).

  iii. Enabling full transactional control over the identified accounts, proceeds, and collateral exclusively for the Authorized Representative(s).

(g) Upon YSA's request, immediately remit funds subject to YSA's security interests to YSA.

YSA's prior correspondence provided more than sufficient information for First United Bank to identify the Subject Properties, the Kulick-owned entities, and the accounts, rents, and proceeds at issue. To the extent First United Bank contends that additional identifying information is necessary, please advise immediately and specifically what information is needed so that YSA may evaluate the request.

For all communications regarding the accounts, funds, rents, and proceeds subject to YSA's demands, please contact Aharon Diveroli, AD@ysainvestments.com. For all other questions regarding YSA's demands, please contact the undersigned.

Nothing in this correspondence waives any of YSA's rights or remedies. YSA expressly reserves all rights and remedies available at law or in equity, including any legal action should First United Bank fail or refuse to implement the actions requested and required by YSA's valid

mortgages, related loan documents, and perfected security interests. First United Bank is further reminded that YSA has sustained damages through the prior failure to recognize and honor YSA's rights, and such damages continue to increase.

Yours very truly,

John M. "Jake" Krattiger
For the Firm

JMK/kc
Enc.