

BRODSKY FOTIU-WOJTOWICZ

June 19, 2026

**VIA EMAIL**

Joshua C. Greenhaw
Mee Hawkins Greenhaw Cotner PLLP
50 Penn Place
1900 NW Expressway, Suite 1400
Oklahoma City, OK 73118
jgreenhaw@mhgclaw.com

> **Re:  Demand for Immediate Release of Frozen Deposit Accounts**

Dear Mr. Greenshaw:

Along with Andrew Shank of Eller & Detrich, we represent Marc Kulick and various entities controlled by Mr. Kulick.  We write with respect to the entities (collectively, the "Account Holders") identified on Exhibit A to the January 29, 2026 correspondence sent on behalf of YSA Investments 1, LLC ("YSA"). As you know, Mr. Kulick has management authority over the Account Holders.

We understand that, in response to the June 15, 2026 letter from John M. Krattiger of Gable Gotwals on behalf of YSA addressed to your office (the "June 15 Letter"), First United Bank and Trust Company ("First United" or the "Bank") has frozen all deposit accounts maintained at the Bank in the name of, or for the benefit of, the Kulick Entities, and that the Bank has indicated its intent to interplead the funds held in those accounts.

We write to demand that the Bank immediately release the frozen accounts and restore full access and control to the Account Holders. The June 15 Letter fundamentally mischaracterizes the Delaware Court of Chancery's Post-Trial Memorandum Opinion and provides no lawful basis for the Bank to withhold funds belonging to its own customers, as more fully explained below.

### I.  The June 15 Letter Mischaracterizes the Chancery Court Opinion

On June 9, 2026, the Delaware Court of Chancery issued its Post-Trial Memorandum Opinion in C.A. No. 2025-1319-KSJM, styled *Marc Kulick et al. v. YSA Investments 1 LLC* (the "Opinion").[1] The June 15 Letter cites the Opinion as the basis for YSA's demand that First United turn over complete control of all Kulick Entity deposit accounts. That characterization of the

---

[1]  My firm tried the case in the Delaware Court of Chancery and, unlike Gable and Gotwals, is well versed in all of the pleadings, hearings, and rulings therein.

BENJAMIN H. BRODSKY, ESQ.                    44 W. FLAGLER ST., SUITE 2200
WWW.BFWLEGAL.COM                                    MIAMI, FLORIDA 33130
BBRODSKY@BFWLEGAL.COM                        T. 305-503-5054 F. 786-749-7644

Opinion is fundamentally misleading, and the Bank should not have relied on it as a basis for freezing its customers' accounts. A cursory reading of the Opinion reveals that it does not—in any respect—address, authorize, or support YSA's demand for control over bank accounts or funds held by the Kulick Entities at First United.

The June 15 Letter claims that the Opinion "clearly affirms the validity and broad authority granted by Mr. Kulick to YSA in the loan documents that require compliance with YSA's demand for First United Bank to provide YSA with control of the identified collateral." That statement is false. The sole issue before the Court was whether the plaintiffs in that case had the right to a mandatory injunction requiring cancellation of second mortgages recorded byYSA on real properties owned by certain Title Owner entities. The Court ruled in YSA's favor on that narrow question only, concluding that the Power of Attorney provision in the Loan Documents, combined with the Joinder, gave YSA the right to record second mortgages against real property owned by entities bound by the Joinder.

However, the Court did not enter any order directing the turnover, freezing, or control of deposit accounts. The Court did not adjudicate any rights YSA may or may not have in funds held in bank accounts. The Court did not order any relief pertaining to cash, deposits, rents, or proceeds held by any financial institution. There is not a single word in the Opinion about bank accounts at First United or anywhere else.

## II.      The POA Language Does Not Authorize Seizure of Bank Accounts

The June 15 Letter quotes extensively from the Power of Attorney provision and the Court's interpretation of it, as though the Court blessed YSA's right to seize control of deposit accounts. It did not. The Court's analysis centered on whether the Power of Attorney authorized YSA to "take whatever steps that it deems necessary in its sole discretion to secure and protect its interests, including but not limited to . . . taking any action against any of the Collateral or any real or personal property owned by the Collateral . . ." in the limited context concerning one specific action: the recording of second mortgages on real property owned by the Title Owners. The Court did not hold that this language authorizes YSA to demand that a third-party depository institution freeze or turn over funds belonging to its own customers. That question was never presented to the Court, never briefed, and never decided.

Moreover, the Court's ruling was limited to declaring that Plaintiffs failed to carry their burden to prove entitlement to a mandatory injunction requiring the removal of those mortgages— i.e., that YSA's recording of the mortgages was not unauthorized. The Court entered judgment for YSA solely on the injunction claim. It did not award YSA any affirmative relief, did not direct any party to take any action, and did not enter any order that could remotely be construed as directing a bank to freeze accounts or turn over funds.

No order was entered granting YSA control over bank accounts. No order was entered directing any bank to freeze or turnover funds. No order was entered adjudicating the rights of First United, the Kulick Entities, or YSA with respect to deposit accounts. The June 15 Letter is nothing more than an extrajudicial demand from opposing counsel in active litigation, and it does not constitute lawful authority for the Bank to withhold funds from its own customers.

### III.     The Opinion Is on Appeal and Does Not Constitute a Final, Non-Appealable Order

Furthermore, the Opinion is being appealed. Until the appellate process is concluded, the Opinion's findings remain subject to reversal or modification. Even if the Opinion were somehow relevant to deposit accounts—which it is not—the Bank should not be taking irreversible action based on a non-final judicial determination that is actively being challenged on appeal. The Bank's decision to freeze accounts based on a contested, non-final opinion—which does not even address bank accounts—compounds the impropriety of its actions.

### IV.     The Bank's Obligations to the Account Holders

First United has an independent contractual and legal obligation to the Kulick Entities as its depositors and account holders. Under Oklahoma law and the Uniform Commercial Code, the relationship between a bank and its depositor is that of debtor and creditor. The Bank owes the funds in the deposit accounts to the Kulick Entities as the named account holders. No third party's unilateral demand—unaccompanied by a court order, garnishment, levy, or other lawful process— can override the Bank's contractual obligations to its customers.

YSA has not obtained any court order directing the Bank to freeze or turnover funds. YSA has not obtained a garnishment order. YSA has not obtained a prejudgment attachment. YSA has not perfected a security interest in any deposit account through a deposit account control agreement with First United. The June 15 Letter itself acknowledges that YSA is seeking "control" over accounts—but control over a deposit account under Article 9 of the UCC requires either a control agreement signed by the Bank or a court order. YSA has neither. The Bank cannot substitute a demand letter from a litigant's counsel for the legal process required to establish rights in a deposit account. The Bank's decision to freeze accounts based solely on the June 15 Letter was without legal justification and must be reversed immediately.

### V.     Interpleader Is Inappropriate

We understand the Bank has expressed an intent to interplead the funds in the accounts. Interpleader is available only where there are competing claims to the same fund such that the stakeholder faces a genuine risk of multiple liability. Here, there is no genuine competing claim to the funds in the deposit accounts. YSA has no judgment against the Kulick Entities for money. YSA has no court order directing the Bank to do anything. YSA has no deposit account control agreement. The Chancery Court Opinion says nothing about bank accounts. YSA's UCC-1 filings against the Kulick Entities cover "membership interests" in holding companies—not deposit accounts at First United. A demand letter from a litigant's counsel does not create a legally cognizable "claim" to funds sufficient to support interpleader. If it did, any creditor could freeze any debtor's bank account simply by sending a letter to the bank asserting an interest—a result that would be absurd and contrary to the entire framework of creditors' rights under Oklahoma and federal law.

The Bank's willingness to entertain YSA's demands—and to freeze accounts that it is contractually obligated to maintain for the Account Holders—exposes the Bank to significant liability. The Kulick Entities operate a portfolio of 34 multifamily real estate properties. These properties have ongoing operational expenses, vendor obligations, mortgage payments, insurance premiums, payroll, and other time-sensitive financial obligations that require immediate access to operating funds. Every day that the Bank continues to freeze these accounts, the Account Holders suffer mounting damages for which the Bank may be held liable, including but not limited to late payment penalties, loan defaults, vendor claims, regulatory exposure, lost business opportunities, and damage to tenants who depend on proper maintenance and operation of these properties.

## VI.    Demand

For the foregoing reasons, we hereby demand that First United Bank and Trust Company immediately:

1.  Release all frozen deposit accounts maintained in the name of, or for the benefit of, the Kulick Entities;
2.  Restore full access, transactional authority, and online banking credentials to the authorized signatories of the Account Holders;
3.  Cease and desist from providing any account information, balances, or other confidential customer information to YSA or its representatives without a court order or other lawful process;
4.  Refrain from filing any interpleader action, as no legally sufficient competing claim to the funds exists; and
5.  Confirm in writing, within two (2) business days of receipt of this letter, that the Bank has complied with the foregoing demands.

The Bank is hereby on notice that the Account Holders will hold First United fully responsible for any and all damages, losses, costs, and expenses arising from the Bank's wrongful freezing of the accounts, including consequential damages, lost revenues, third-party claims, and attorneys' fees. Nothing in this correspondence waives any of the Account Holders' rights or remedies, all of which are expressly reserved.

We trust that the Bank will act promptly and in accordance with its legal obligations to its customers. Should the Bank have any questions, or should the Bank wish to discuss this matter further, please contact the undersigned or Mr. Shank immediately.

Sincerely yours,

Benjamin H. Brodsky

cc:    Andrew Shank, Esq. (via email only, AShank@ellerdetrich.com)