FILED IN DISTRICT COURT
OKLAHOMA COUNTY

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

FEB -4 2026

RICK WARREN
COURT CLERK
136_____

SAPEREAN CAPITAL IV TB NOTE LENDER KD4, LLC, a Delaware limited liability company,

Plaintiff,

v.

WOODLAND OAKS BEST LIVING, LLC, a Delaware limited liability company; WOODLAND OAKS INVESTORS, LLC, a Delaware limited liability company; FAIRFAX BEST LIVING, LLC, a Delaware limited liability company; FAIRFAX INVESTORS, LLC, a Delaware limited liability company; WESTLAKE HARDWARE, INC., a Delaware corporation; PLATINUM P, LLC F/K/A ALERT PLUMBING & DRAIN, LLC, an Oklahoma limited liability company; RASA FLOORS & CARPET CLEANING, LLC, a Texas limited liability company; EMPIRE PROTECTION SERVICES, LLC, an Oklahoma limited liability company; PRISTINE PEST CONTROL, LLC, an Oklahoma limited liability company; TRES PALM SUPPLY, LLC d/b/a MAINTENANCE SUPPLY SOLUTIONS, a Texas limited liability company; JETZ SERVICE CO., INC., a Kansas Corporation; REGIONAL GROUNDWORK, LLC, an Oklahoma limited liability company; THE BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY; THE BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY; THE OKLAHOMA COUNTY TREASURER; and THE TULSA COUNTY TREASURER,

Defendants.

Case No.: CJ-2025-8499

## AMENDED AGREED ORDER OF APPOINTMENT OF A RECEIVER

On this __4__ of __Feb.__ 2026 comes before the Court, the Motion of Plaintiff Saperean Capital IV Originator, LLC ("**Plaintiff**"), for Appointment of a Receiver (the "**Motion**") in which Plaintiff seeks the appointment of a receiver for certain real and personal property identified in the Motion owned by Defendants Woodland Oaks Best Living, LLC, Woodland Oaks Investors, LLC, Fairfax Best Living, LLC, and Fairfax Investors, LLC (collectively, "**Borrowers**")

#10729335v1

1

and consisting of multi-family apartment buildings located at 7142 South 92nd East Avenue, Tulsa, OK 74133 (the "**Woodland Property**") and 7801 NE 10th Street, Midwest City, Oklahoma (the "**Fairfax Property**" and together with the Woodland Property, as more fully described in the Mortgage, the "**Property**"). The Plaintiff and Borrowers have agreed that the relief requested in the Motion should be granted as set forth herein. This Order shall amend the previous Order entered on January 22, 2026.

Having examined the pleadings and papers filed in this case, and having determined that jurisdiction and venue are proper in this Court and sufficient notice has been given, and being otherwise fully advised, and having fully considered the matter, the Court, for good cause shown, hereby finds and orders as follows:

NOW THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:

(a)     The Court finds that the Appointment of a Receiver for the Property is proper for good cause shown. Accordingly, Scott Shefman with Friedman Real Estate Management ("**Receiver**") is hereby appointed as the receiver for the Property. Receiver possesses the necessary qualifications and experiences and is not an attorney or related to any party to this action;

(b)     Upon the entry of this Order and the posting of a bond, if required by the Receiver (referred to as the "**Effective Date**"), the Receiver is appointed to act and serve as receiver with respect to the Property and with respect to the income therefrom, whether now existing or hereafter collected, including the rents, profits and income from the Property;

(c)     As of the Effective Date, the Receiver is authorized to take and have complete and exclusive control, possession and custody of the Property, together with any and all bank accounts, credit card receipts, demand deposits, reimbursement rights, bank deposits and security deposits related thereto, including accounts titled in the name of Borrowers, all without offset by Borrowers

or by any property manager or third party, including, without limitation the property manager at the Property, and all financial institutions are directed to deliver to the Receiver any such deposits and all records relating thereto, and, with this authority, the Receiver is allowed to transfer all deposit accounts to another financial institution insured by the federal government in the name of the Borrowers or Receiver and to write checks and make withdrawal on such accounts, provided that only the Receiver (and its designated management company or operator) shall have deposit, check-writing and other authority to conduct transactions in such accounts;

(d)   As of the Effective Date, the Receiver is authorized to take any and all actions the Receiver deems reasonable and appropriate to prevent waste to and to preserve, secure, manage, maintain and safeguard the Property;

(e)   As of the Effective Date, Borrowers, and all persons acting under their direction, and any current or past manager of the Property, shall deliver to the Receiver possession of the Property, without any right of offset or recoupment, including: (1) all keys; (2) all leases and communication and correspondence files relating thereto; (3) all security deposits, rent, prepaid rent, other sums relating to the use, enjoyment, possession, improvement or occupancy of all or any part of the Property, and any accountings of any of the foregoing; (4) a current rent roll for the Property; (5) any and all accounts receivable and accounts payable reports; (6) any and all documents pertaining to any ongoing litigation; (7) any and all documents pertinent to any licenses maintained in connection with the Property, and all communications and correspondence pertinent thereto; (8) any and all documents pertinent to any agreements entered into in connection with the Property, and all communications and correspondence pertinent thereto; (9) any and all contracts in effect with respect to any of the Property, and all communications and correspondence pertinent thereto; (10) any and all contracts, bids or other materials relating to any contractor work at the

Property; (11) any and all payroll records, employee files, applications and other materials relevant to those persons employed by or at the Property; (12) all such other records pertaining to the management of the Property; (13) all documents pertaining to any ongoing litigation (excluding the instant action); (14) all documents pertinent to any licenses maintained in connection with the Property together with all communications and correspondence relating thereto; (15) all contracts or agreements entered into in connection with the Property, including service contracts, together with all documents, communications and correspondence relating thereto; (16) all contracts, bids or other materials relating to any contractor work at the Property; (17) all payroll records, employee files, applications and other materials relevant to those persons employed by Borrowers; (18) a list of all bank accounts in the name of or relating to the Property, including the name of the institution where each account is located, the account number for each such account and the monthly statements for each such account for the 12 month period preceding the date of this Order; (19) all third party reports, including environmental condition reports, audits and studies relating to the Property; and (20) all such other records relating to the management of the Property or otherwise relating to the Property; provided, however, that neither Borrowers nor any other third party shall be required to provide any documents, communications, correspondence and other information that is subject to an attorney-client privilege or other confidentiality obligations that prohibits such disclosure;

(f)     As of the Effective Date, all persons and entities, including Borrowers and all persons acting through Borrowers, including any current or past manager of the Property, any owner of Borrowers, or any person or entity with an interest in any owner of Borrowers, are enjoined from in any manner disturbing the Receiver's possession of the Property or any other property of the receivership estate created by this Order, and are prohibited and restrained from

disposing of, dissipating, mishandling or misappropriating any such property, and are prohibited and restrained from collecting any rents or other sums due to Borrowers, unless otherwise directed by the Court;

(g)    As of the Effective Date, the Receiver is vested with (and Borrowers and their respective agents and any property manager shall immediately deliver to the Receiver) exclusive possession, custody and control of all books and records with respect to the operation of the Property and all information necessary for the Receiver to carry out its duties under this Order and otherwise, including any and all information relating to: (1) rent rolls, occupancy reports and leases affecting the Property; (2) amounts paid by lessees and other obligors of Borrowers; (3) liens, encumbrances and other interests against or affecting the Property; (4) real estate and other property taxes owed by Borrowers; (5) all types of insurance affecting the Property (which Borrowers shall not act to terminate or modify); (6) plans, specifications, surveys and drawings of the Property; (7) access codes to the Property and any units therein; (8) all operating statements and other financial statements relating to the Property; (9) all maintenance manuals for any equipment located at the Property; (10) all licenses, permits or other government issued documents necessary for the continued operation of the Property; and (11) all other aspects of the Property and the operation and management thereof (including the items set forth in Paragraph (e) above);

(h)    As of the Effective Date, the Receiver is authorized to manage, operate and lease the Property, and, upon further approval of the Court, sell the Property;

(i)    As of the Effective Date, the Receiver is authorized to retain, hire or discharge employees of the Borrowers, if any, and to hire or retain any employees, agents, representatives, consultants, contractors, property managers, leasing brokers, accountants and attorneys, including Plaintiff's attorneys, as necessary or appropriate to perform its duties under this Order or as

#10729335v1                                    5

otherwise directed by the Court, provided, however, that the Receiver shall have no obligation to employ or pay any current employees of Borrowers but shall not be limited from doing so if the Receiver elects to do so;

(j)　As of the Effective Date, the Receiver shall have the right to continue to operate under all existing licenses and permits issued with respect to the Property whether or not in the name of Borrowers.

(k)　As of the Effective Date, the Receiver is authorized to enter into a franchise agreement with respect to the operation of the Property with the consent of Plaintiff;

(l)　As of the Effective Date, the Receiver is authorized to make payments and disbursements, in the ordinary course of business, as may be needed and proper for the preservation of the Property and the Receiver has no obligation to pay pre-receivership expenses of any kind unless the Receiver determines that such payments may benefit the Property and then only upon approval of Plaintiff or the Court;

(m)　As of the Effective Date, the Receiver is authorized to receive and collect any and all sums held by and due and owing to Borrowers relating to the Property, whether the same are now due or hereafter become due and owing, and to deposit such sums into an account in the name Borrowers or otherwise using Borrowers' FEINs (which sums shall not be commingled with any other funds) established and maintained by the Receiver;

(n)　As of the Effective Date, the Receiver is authorized to continue any current insurance policies in place and pay any related invoices or policy premiums for such policies and is authorized to purchase further insurance as the Receiver deems appropriate to the extent such insurance is required under the relevant Loan Documents (as defined in the Petition) or is approved by Plaintiff or the Court.  Borrowers shall cooperate in all reasonable respects with Receiver to

obtain, renew or re-document all insurance required under the Loan Documents, and to modify any existing or new insurance policies if deemed appropriate by Receiver. All insurance policies shall name the Plaintiff and Receiver and any property manager retained by Receiver, as an additional named insured, as mortgagee, and as loss payee with respect to all casualty policies. The Receiver may cancel any existing insurance policy, and Borrowers and their employees and agents are prohibited from cancelling, reducing or modifying any and all insurance coverage in existence with respect to the Property until Receiver has notified Borrowers that the above-described coverage has been obtained by Receiver. Any refunds received by Borrowers arising from the cancellation of its insurance coverage on the Property shall be turned over to the Receiver. No insurance company shall be permitted to terminate coverage or refuse coverage for the Property based upon prior unpaid premiums, claims history or because of the appointment of Receiver pursuant to this Order;

(o)     As of the Effective Date, the Receiver is authorized to pay all current and past due real estate taxes, personal property taxes and any other taxes and assessments against any of the Property;

(p)     As of the Effective Date, the Receiver is authorized to open and review mail and faxes received at the Property or elsewhere directed to Borrowers or their manager relating to the Property and may issue demand that the U.S. Postal service grant exclusive possession and control of all mail including postal boxes as may have been used by Borrowers and may direct that such mail relating to the Property be re-directed to the Receiver;

(q)     As of the Effective Date, the Receiver is not required to prepare and file tax returns with respect to the Property, and the Receiver is not responsible for the preparation of any tax returns for Borrowers, provided, however, that the Receiver shall furnish any information

reasonably requested by Borrowers to allow Borrowers, or their agents, to prepare any tax returns of Borrowers;

(r)     As of the Effective Date, the Receiver is authorized to: (1) negotiate and enter into new leases, occupancy agreements and other contracts in the ordinary course of the business of the Property; (2) modify existing leases, occupancy agreements and other contracts in the ordinary course of the business of the Property; (3) terminate existing agreements and contracts pertaining to the Property as Receiver determines is reasonably necessary with no further obligations or liability, including the liability to pay any termination fee under such terminated contract; (4) pay all utilities, expenses and other obligations secured by, or which may give rise to, liens, and all other outstanding obligations to suppliers and servicers in the ordinary course of business, including obligations incurred prior to the commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership; (5) make repairs necessary to the maintenance of the Property, including but not limited to all repairs necessary to remediate any environmental conditions present at the Property, in order to preserve the Property in the ordinary course of business, provided, however, that the Receiver shall not make any improvements, repairs or remediation having a cost of $5,000.00 or more without first obtaining approval of either Plaintiff or the Court unless Receiver reasonably determines that such repairs must be made prior to obtaining approval to address any life safety issues arising at the Property; and (6) take all steps necessary to comply with all requirements, regulations and laws, including but not limited to environmental or health requirements, regulations and laws, applicable to the Property, and to deal with all regulatory authorities in connection with the same, and the Receiver shall have no liability

for any environmental claims or other municipal code violations existing as of the date of this Order;

(s) As of the Effective Date, the Receiver is authorized through itself or by an agent, upon request of Lender, to lease, market for lease and/or sale and, upon further Court order, and with the consent of Lender, negotiate and sell the Property (including free and clear of liens, encumbrances and other interests in the Property);

(t) As of the Effective Date, the Receiver is authorized to take possession of and receive from all depositories, banks, brokerages and otherwise (collectively, the "**Financial Institutions**") any money on deposit in all such Financial Institutions belonging to Borrowers or arising from the operation of the Property, whether such funds be in accounts titled in the name of Borrowers or not (but excluding any monies paid to or held by Lender). All Financial Institutions are directed to deliver such deposits to Receiver and such records as Receiver may reasonably request with respect to such accounts. Receiver may, in its sole discretion, choose to indemnify any Financial Institution(s) upon whom such demand is made, and is empowered to open any new accounts using a new EIN, or close any such accounts. Receiver shall deposit monies and funds collected and received in connection with the Property at a federally insured banking institution or savings association with offices in the State of Oklahoma. Borrowers shall assist and cooperate with Receiver to have all funds from the Financial Institutions turned over to Receiver as soon as possible. Borrowers understand that time is of the essence in effectuating the turn-over of these funds to Receiver;

(u) As of the Effective Date, the Receiver is authorized to, in its discretion, institute, prosecute, defend, compromise and/or intervene in or become a party to such actions or proceedings in state or federal courts which may in the Receiver's opinion be necessary for the

#10729335v1                                        9

protection, maintenance and preservation of the Property, for the carrying out of the terms of any order of the Court affecting the Property, to collect rent and otherwise enforce the terms and provisions of any tenant leases with respect to the Property, to remove tenants or other persons or entities from the Property, and/or to defend against any action brought against the Receiver acting in such capacity, and the Receiver is authorized to utilize counsel for Plaintiff and/or retain other counsel in connection with the foregoing and to seek reimbursement of any reasonable and customary fees or costs incurred by Receiver or its property manager in connection with the utilization of such counsel, provided, however, that Receiver must first obtain approval from Plaintiff or the Court with respect to any financial terms of such engagement. This Order shall act as notice to all tenants of the Property that the Property is now under the control of the Receiver;

(v) As of the Effective Date, the Receiver is authorized to enter into further lending transactions by which Plaintiff may in its sole discretion, but has no obligation to, lend monies to the Receiver (on a nonrecourse basis as to Receiver) to enable the Receiver to perform its duties hereunder, in which case any monies loaned shall be deemed protective advances for the benefit of the Property and shall be secured by a first and prior lien and security interest on the Property in favor of Plaintiff, to the extent permitted in the Loan Documents;

(w) As of the Effective Date, the Receiver may apply any funds received from the operation of the Property, subject to the lien rights of Plaintiff, as follows: (1) to the Receiver's approved fees and expenses; (2) to current operating expenses of the receivership incurred by the Receiver in the ordinary course of business; and (3) to the monetary obligations owed to Plaintiff under the Loan Documents or otherwise;

(x) As of the Effective Date, the Receiver is authorized to maintain sufficient cash on hand to enable the Receiver to meet expenses, in an amount to be agreed to between the Receiver and Plaintiff;

(y) As of the Effective Date, the Receiver shall allow Plaintiff and its agents access to the Property at all reasonable times;

(z) As of the Effective Date, the Receiver is directed to file with the Court and serve on parties of record, within 60 calendar days of entry of the order of the Court, and not less than monthly thereafter, and within 45 calendar days after termination of the receivership, full and complete reports, under oath, detailing all receipts, disbursements and transactions, including a budget for all future expenses, if required by Plaintiff, affecting the Property and that, at the option of Plaintiff, may be submitted to the Clerk of the Court under seal and shall not be available for public inspection without further order of the Court;

(aa) No person or entity may file suit against the Receiver, in its capacity as Receiver, unless otherwise authorized in advance by this Court;

(bb) The Receiver, and those agents acting under Receiver's control, shall have no personal liability in connection with any obligations owed by Borrowers to their creditors, and no person or entity, including any creditor of the Borrowers, other than Plaintiff, shall have the right to seize or attempt to seize any property delivered to the Receiver hereunder, and no person, entity or creditor, including any utility company, shall act to terminate any existing service, either as a means of attempting to collect an obligation of Borrowers or on account of an obligation of Borrowers, and the Receiver shall have no obligation to pay for services incurred prior to its appointment;

(cc)    Any utility company providing services to the Property, including gas, electricity, water, sewer, trash collection, telephone, communications or similar service, is prohibited from discontinuing service to the Property based upon unpaid bills incurred by Borrowers prior to this Order or demanding that the Receiver deposit funds in advance to secure such services;

(dd)    The Receiver, and those agents acting under Receiver's control, shall have no personal liability in connection with their conduct in the course of this receivership, except for claims due to their gross negligence, gross or willful misconduct, or malicious acts;

(ee)    As of the Effective Date, the Receiver is authorized to undertake all actions specifically set forth in this Order, as well as to exercise the usual and customary powers accorded to a receiver under Oklahoma law;

(ff)    The Receiver may be removed upon 15 days written notice by Plaintiff that Plaintiff desires such removal, provided that Receiver shall be entitled to any compensation or reimbursements owed under the terms of this Order as of the date of such removal, with a copy of such notice lodged with the Court, or upon an order of the Court, in which event the Court shall appoint a substitute receiver to be recommended by Plaintiff;

(gg)    Upon the transfer of title of the Property to Plaintiff or its assignee by judicial foreclosure or by means of a deed in lieu of foreclosure, the Property shall cease to be part of the receivership estate created by this Order, the Receiver's rights, duties and responsibilities with respect to the Property pursuant to this Order shall automatically terminate without further Order of this Court, and Plaintiff or the Receiver may move the Court for the immediate discharge of the Receiver;

(hh)    Nothing contained in this Order shall be construed as obligating the Receiver to advance its own funds in order to pay the costs and expenses of the receivership that have been approved by the Plaintiff and the Court;

(ii)    The Receiver may apply at any time to the Court, with notice to all other parties in this case, for further instruction and for further power necessary to enable the Receiver to properly fulfill its duties;

(jj)    The Receiver shall be paid as provided for in the Fee Schedule set forth in Exhibit A attached hereto, and is hereby authorized to retain a property management company, which property management company shall be paid in an amount consistent with current management rates and subject to approval by Plaintiff;

(kk)    Any action of the Receiver authorized in this Order shall require the consent of Plaintiff if and when such action, if undertaken by Borrowers, would require Plaintiff's consent or authorization under any Loan Document.  If the Plaintiff's written consent is required under any of the Loan Documents or under this Order, consent via e-mail is sufficient and approved;

(ll)    Plaintiff shall not become a mortgagee in possession as a result of this Order, and neither Plaintiff nor the Receiver shall become responsible for any debts or obligations relating to the Property incurred prior to the date of this Order, including assessments, real estate taxes, environmental obligations or any other obligations and neither the Plaintiff nor the Receiver is required to advance monies to cover operating deficiencies;

(mm)    Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to Receiver or the Property based upon the non-payment of such taxes, assessments, goods or services, and/or utilities provided prior to the date of this Order and from attempting to collect taxes, assessments, invoices and utility charges from Receiver for

#10729335v1                                           13

any payment obligations whatsoever that arose prior to the date of this Order. Each utility company or entity providing service to the Property shall forthwith transfer any deposits which it holds to the exclusive control of Receiver and any utility company providing services to the Property, including gas, electricity, water, sewer, trash collection, telephone, communications, or similar services, is prohibited from discontinuing service to the Property based upon unpaid bills incurred by Borrowers. Further, such utilities are prohibited from demanding that the Receiver deposit funds in advance to secure such services.

(nn) The entry of this Order shall not in any manner prejudice any of the other rights and remedies of Plaintiff under its Loan Documents and/or under applicable law nor shall it preclude Plaintiff from exercising such other rights and remedies, including the judicial foreclosure of the Property, and the Receiver shall cooperate with Plaintiff in any such proceedings;

(oo) The entry of this Order shall not in any manner preclude any consensual resolution that may be reached between Plaintiff and Borrowers, and the Receiver shall abide by the terms of any such consensual resolution;

(pp) The Receiver shall post a surety bond in the amount of $200,000.00, and the cost of securing and maintaining such bond shall be an expense of the receivership. This Order is made conditional on the posting of this bond which may also be made in cash or check payable to the Clerk of Court;

(qq) The Receiver shall file with the clerk of this Court the oath to the effect that the Receiver will faithfully discharge its duties and obey the orders of this Court;

(rr) Upon receipt of a copy of this Order, and upon Receiver's request, any law enforcement officials shall take any and all actions necessary to preserve the peace, protect the Property and enforce and effectuate the terms and provisions of this Order; and

#10729335v1                                      14

(ss)    Any duties of the Receiver described herein may be fulfilled by Plaintiff or its counsel and shall thereupon be deemed to have been fulfilled by the Receiver.

IT IS SO ORDERED this 4 day of Feb. 2026.

_____
Judge of the District Court

Agreed to:

_____
Kiran A. Phansalkar, OBA #11470
Preston M. Sullivan, OBA #33619
Elizabeth H. Attaway, OBA #35539
Conner & Winters, LLP
1700 One Leadership Square
211 N. Robinson Ave.
Oklahoma City, OK 73102
Telephone:  (405) 272-5711
Facsimile:  (405) 232-2695
Email:   kphansalkar@cwlaw.com
          psullivan@cwlaw.com
          battaway@cwlaw.com
*Counsel for Plaintiff Saperean*
*Capital IV TB Note Lender KD4, LLC*

_____
Andrew A. Shank, OBA #22298
Lacy B. Williamson, OBA #34004
Eller & Detrich, P.C.
2727 East 21st Street, Suite 200
Tulsa, Oklahoma, 74114
(918) 747-8900 – telephone
(918) 747-2665 – facsimile
ashank@ellerdetrich.com
lwilliamson@ellerdetrich.com
*Attorneys for Defendants*
*Woodland Oaks Best Living, LLC*
*Woodland Oaks Investors, LLC*
*Fairfax Best Living, LLC*
*Fairfax Investors, LLC*

<u>**EXHIBIT A**</u>
<u>**RECEIVERSHIP AND PROPERTY MANAGEMENT FEE SCHEDULE**</u>
<u>**RECEIVERSHIP FEE**</u>

Receiver will receive a fee of Three Hundred Fifty Dollars ($350.00) per hour not to exceed $6,000.00 per month for the following Receivership functions associated with the Property:

- Assume custody and control of the Property as well as all personal property, books, records and documents associated with the Property;
- Assume custody and control of all existing bank operating accounts regarding the Property and open additional bank operating accounts as and when needed;
- Demand, receive and collect all rents, profits and other amounts arising with respect to the Property;
- Pay expenses incurred with the Property in the normal and ordinary course of business;
- Modify, reject or terminate agreements, contracts, or commitments related to the Property;
- Hire and monitor vendors to manage, lease and maintain the Property;
- Purchase inventory, supplies and equipment that may be necessary to manage, lease and maintain the Property;
- Undertake renovations, repairs and replacements as may be necessary to manage, lease and maintain the Property;
- Hire and monitor other professionals (attorneys, accountants, etc.) as and when the Receiver and/or the Court may deem them necessary to implement and effectuate the performance of its duties;
- Procure and maintain appropriate utility services and insurance coverage for the Property;
- Address life safe issues and code violations affecting the Property;
- Maintain records regarding its oversight and operation of the Property and file periodic reports regarding its oversight of the Property with the Court;
- Make court appearances as and when necessary;
- Other functions and duties as may be appropriate.

## PROPERTY MANAGEMENT FEE PROPOSAL

**Property Management Fee**
- Woodland Oaks: A fee equal to the greater of i. Four Percent (4.00%) of the monthly gross revenue or ii. Fourteen thousand and nine hundred and eighty dollars ($14,980.00) per month.
- Fairfax Apartment: A fee equal to the greater of i. Four Percent (4.00%) of the monthly gross revenue or ii. Eight thousand and eight hundred and twenty dollars ($8,820.00) per month.

Start-up Fee
- Property manager will receive a start-up fee of Ten Thousand Dollars ($10,000.00) per property for costs incurred in setting up the properties in our accounting system, handling all of the HR related transitions, etc.

**Termination Fee**

- Property manager will receive a termination fee equal to one month's minimum management fee if the assignment lasts less than a year and property manager is terminated for other than cause. If the properties are sold, no termination fee will apply.

**Transition Fee**
- Property manager will receive a transition fee equal to one month's minimum management fee for time related to transitioning the properties to a 3rd party.

**Personnel Costs**
- All personnel costs (including but not limited to salary and benefits) for all employees working directly for the benefit of the properties, with the exception of corporate accounting and Executive level oversight, will be property expenses.

**Expense Reimbursements**
Property manager shall be reimbursed for marketing, training, and IT expenses for the benefit of the properties as set out in the schedule below:
- Marketing $10.00 per unit per month until 90% occupancy is achieved, thereafter $2.60 per unit per month
- Training $2.35 per unit per month
- IT For a property with fewer than five computers, a monthly fee of one hundred twenty-five dollars ($125.00) per computer. For a property with five or more computers, an as-utilized fee of one hundred-fifty dollars ($150.00) per hour. Additionally, property manager will receive one hundred-fifty dollars ($150.00) per hour for the time to set-up computers and other hardware at the site level for this assignment. This may include hardware set-up, networking, telecommunications, cable, surveillance cameras, smart locks, electronic entry systems, etc.

**Network Security**
- Property manager will be reimbursed $0.55 per unit per month for fraud and network security.
- In addition to the above, property manager will also be reimbursed for all software, licensing, and technology access costs used in association with the site level operations of the properties.

**Human Resources Administration Fee**
- In addition to all direct costs associated with compensation, including wages, benefits, employer taxes, workman's compensation, etc., property manager shall receive a fee of Five Percent (5.00%) of the on-site payroll cost for costs associated with hiring, onboarding, and offboarding on-site employees, as well as costs associated with administering all benefit programs, payroll, and employee engagement due to discipline and claims.

**Insurance Claims Fee**
- If there is an event requiring an insurance claim relating to damage to the property, including but not limited to fire restoration, storm damage and general liability, then property manager shall receive an administrative fee of Five Percent (5.00%) of the total

claim. In addition, property manager shall receive all agreed upon reimbursable expenses (actual out-of-pocket costs for scheduled items). If property manager procures insurance or renews insurance, it shall receive a fee of Ten Percent (10.00%) of the premium.

**Major Repairs/Capital Improvements Oversight**

- For any major repair or capital improvement cost, property manager shall receive an oversight fee equal to Five Percent (5.00%) of the cost of the project. "Major Repairs/Capital Improvements" shall mean any repair or replacement to any portion of the property where the cost of the project is more than ten thousand and 00/100 dollars ($10,000.00). In addition, property manager shall receive all agreed upon reimbursable expenses (actual out-of-pocket costs for scheduled items).

**Real Estate Tax Appeals**

- If a real estate tax appeal is filed, property manager shall receive a fee as set out in the schedule below:
  - If property manager handles appeal directly—1/3 of the first year's tax savings
  - If property manager engages a third-party—$2,500.00 flat fee per tax year appeal, plus $250/hour (hourly fees capped at $2,500.00 per tax year appealed)
- Plus any out-of-pocket costs associated with the tax appeal

**Disposition Fee**

- Property manager shall receive a disposition fee of One-Quarter Percent (0.25%) should the property be sold during the receivership and property manager is not selected as the investment sales broker.

#10729335v1                                   19