IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| In re: | ) | Case No. 26-17758-MMH |
| | ) | (Chapter 11) |
| Jenk's Best Living, LLC | ) | |
| Debtor. | ) | |
| | ) | |
| Jenk's Best Living, LLC | ) | Adv. Case No. 26-176-MMH |
| Plaintiff, | ) | |
| v. | ) | |
| Mark Kulick, *et al.* | ) | |
| Defendants. | ) | |

## RESPONSE TO ORDER TO SHOW CAUSE

Comes now Jenk's Best Living, LLC (the "Debtor" or "Jenk's"), by and through undersigned proposed counsel, in response to this Honorable Court's order to show cause why venue ought not be transferred (the "Order"), ECF No. 48 in case no. 26-176-MMH (the "Adversary Proceeding"), ECF No. 42 in case no. 26-17758 (the "Main Case"), and states as follows:

### I.     Introduction

It is not uncommon for singular events—or discreet chains of events—to directly cause a multitude of bankruptcy filings. Macropolitical occurrences, ranging from the introduction of a novel coronavirus to the spiking of fuel costs on account of war, regularly cause a nationwide uptick in chapter 11 filings. Microlocal occurrences, in the nature of factory closures and retail rightsizings, also have a tendency to prompt correlative petitions for relief. One need not strain to

1

find the landlord that seeks to reorganize shortly after a tenant exercises section 365 rejection rights. Nor is it difficult to draw a line from the issuance of WARN Act notices to a resulting onslaught of chapter 13 petitions several months later, when mortgage payments fall predictably behind.

Here, there is little question but that the unconscionable, irresponsible, and poorly-planned conduct of YSA Investments 1, LLC ("YSA") has spawned a series of bankruptcy filings. An unregulated private lender extended credit at the rate of 7,000% per annum, took collateral it was not entitled to take, end-ran the foreclosure process by executing self-benefiting deeds in lieu of foreclosure through the novel use of a power of attorney, forcibly seized apartment buildings, and apparently did all of this without any plan to actually then provide insurance for the premises or legal fees for the inevitable resulting stream of litigation. The rollout of New Coke was both better planned and less abrasive than the half-baked scheming of YSA.

Yet such is not cause to consolidate this case with each other bankruptcy filing occasioned by the malfeasance, misfeasance and nonfeasance of YSA. Jenk's does not intimately resemble the other parties presently seeking to reorganize. The administration of the Debtor's case is most efficient in this Honorable Court for a multitude of reasons. And there is nothing about the Adversary Proceeding that requires the matter to be adjudicated alongside other adversary proceedings involving a common defendant.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Main Case and the Adversary Proceeding remain where they were commenced and where they belong: Baltimore.

## II.    Background Facts

Having overseen first day hearings (including a hearing on a motion for entry of a temporary restraining order, which was partially granted in the Adversary Proceeding), this Honorable Court is—no doubt—well familiar with the idiosyncrasies of these cases. And the Order certainly further evidences as much. So Jenk's will forbear from extensively rehashing relevant facts herein aside from highlighting, generally, the following points:

1.    Jenk's owns—or, as YSA contends, formerly owned—the real property located at 204 S. Riverfront Drive, Jenks, OK 74037 (the "Property").

2.    As of the date on which Jenk's sought bankruptcy protection, Jenk's was in sole possession of the Property (albeit with individual units being leased to tenants).

3.    Under the operating agreement of Jenk's (the "Operating Agreement), Mark Kulick ("Mr. Kulick") was the designee of the entity charged with the Debtor's management and operated the Property subject to strict limitations set forth in that governing document.

4.    For reasons that are less-than-clear, Mr. Kulick amassed growing amounts of personal debt and elected to do business with YSA, a lending entity seemingly founded upon the tri-legged values of bombast, unconscionability, and chaos.

5.    As part of one or more transactions with YSA, Mr. Kulick purported to pledge the Property, even though he expressly lacked the authority to do so under the Operating Agreement.

6.    Mr. Kulick also apparently gave YSA his personal power of attorney.

7.    Not one penny of YSA's loans ever enriched Jenk's, touched a depository account in the name of Jenk's, or was used for the benefit of Jenk's.

8.      When Mr. Kulick invariably defaulted on a promissory note bearing interest at the rate of 7,000% per annum (not a typographical error), YSA used the aforesaid power of attorney to transfer the Property to itself via deed in lieu of foreclosure.

9.      The use of a self-executed deed in lieu of foreclosure appears to have violated any number of laws including, but assuredly not limited to, (i) federal securities laws governing the underlying debt instruments (including SEC Regulation 10b-5); (ii) at least two provisions of the modern incarnation of the Statute of Elizabeth; and (iii) state laws governing notice attendant to foreclosure actions.

10.     The parent company of Jenk's—PSC Thrive, LLC, a Maryland limited liability company—then petitioned for chapter 11 relief in this Honorable Court, with Jenk's filing its own petition under section 301 of the Bankruptcy Code shortly thereafter.

11.     Jenk's has since brought the Adversary Proceeding, seeking (i) a declaration the Property was never lawfully lost to YSA or, in the alternative, (ii) to avoid the Property's loss under chapter 5 of the Bankruptcy Code.

12.     After the Adversary Proceeding was commenced, YSA forcibly seized control of the Property.

13.     This Honorable Court issued a temporary restraining order (the "TRO") providing, *inter alia*, "YSA shall not agree to the Property or an Owner Entity becoming subject to any voluntary or involuntary action or proceeding. . . before a court. . .," and "YSA shall not take any actions or enter into any agreements that may affect the Property or an Owner Entity; this restriction includes (without limitation) that YSA shall not sell, assign, transfer, encumber, pledge, or destroy the Property. . ."

4

14. In direct violation and derogation of the foregoing TRO, YSA promptly filed a petition for chapter 11 relief in the United States Bankruptcy Court for the District of Delaware.

15. It subsequently came to the attention of Jenk's that YSA does not have a policy of insurance in place for the Property and is instead seeking debtor-in-possession financing—to be issued by an insider of YSA and secured by a lien on the Property—to raise funds to procure such a policy of insurance. (The proposed security interest being notably at odds with the unsecured financing obtained in the Main Case, in this Honorable Court, and being of palpable concern insofar as such appears to be a thinly veiled effort to grant YSA's principal a lien on the Property before Jenk's is able to avoid the putative loss of the Property in the Adversary Proceeding.)[1]

## III.   Argument: Venue is Proper in this Honorable Court

While the Order certainly does not suggest the Main Case to have been filed in an improper district (and, to the contrary, expressly cites a rule governing transfers of cases filed in proper districts), Jenk's believes it appropriate to note that there exist two, independent foundations for these cases to proceed in Maryland. One, as observed in the Order, is the existence of a related case. The other, which is less obvious, concerns the principal place of business of Jenk's.

### a.  Existence of Related Case

Plainly, PSC Thrive, LLC ("PSC") petitioned for bankruptcy relief prior to Jenk's. *See In re PSC Thrive, LLC*, Case No. 26-17758-MMH (Bankr. D. Md. 2026). PSC is a Maryland entity and, as such, entitled to seek to reorganize in Maryland. *See* 28 U.S.C. § 1408(1). It does not appear

---

[1] ". . . chutzpah is a young man, convicted of murdering his parents, who argues for mercy on the ground that he is an orphan." *Harbor Ins. Co. v. Schnabel Found. Co.*, 946 F.2d 930, 937 n.5 (D.C. Cir. 1991) (citing *Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 83 (D.C. Cir. 1987)).

there is any question as to the sensibility of PSC filing in this Honorable Court, nor does the Order suggest there is any thought the chapter 11 case of PSC be moved to another jurisdiction.

Since PSC owns 50% of Jenk's, PSC is an "affiliate" of Jenk's. *See* 11 U.S.C. § 101(2)(A). And Jenk's is thereby permitted to seek to reorganize in the same judicial district as PSC. *See* 28 U.S.C. § 1408 ("Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district. . . (2) in which there is pending a case under title 11 concerning such person's affiliate. . ."). This was the basis for venue indicated on the Debtor's petition for bankruptcy relief.

### b.  Principal Place of Business

The second basis for venue is less obvious and was not invoked on the petition for relief: Maryland is the principal place of business of Jenk's. Even though the Debtor exists to own the Property, and even though the Property is located in another jurisdiction, precedent teaches that it is the nerve-center of the Debtor's decisionmaker(s)—not the locale of the physical asset itself— that serves as a principal place of business. For Jenk's, that locale is Baltimore.

Title 28 of the United States Code draws a distinction between a debtor's "principal place of business in the United States," and the locale of a debtor's "principal assets in the United States. . ." 28 U.S.C. § 1408(1).

As observed by the United States Court of Appeals for the Seventh Circuit, there is a reason the foregoing statute provides for that distinction: "principal place" and "principal assets" are oftentimes not one and the same. Indeed, ". . . the 'most important, consequential, or influential' place where a corporation or partnership does its business is likely to be the place where its management decisions are made." *Granader v. Peachtree Lane Assocs. (In re Peachtree Lane Assocs.)*, 150 F.3d 788, 795 (7th Cir. 1998) (quoting *Commissioner v. Soliman*, 506 U.S. 168, 174

(1993)). Moreover, "[t]his focus on the location of the entity's primary decisionmakers is particularly appropriate, we think, in a reorganization case like this one, as such proceedings generally will involve the financial management of the debtor, rather than its day-today operations." *Granader*, 150 F.3d at 795 (citing *In re Commonwealth Oil Refin. Co.*, 596 F.2d 1239, 1246 (5th Cir. 1979); *Capitol Motor Courts v. Le Blanc Corp.*, 201 F.2d 356, 359 (2d Cir. 1953)). *See also In re Va. Park 1, LLC*, 672 B.R. 569, 582 (Bankr. S.D.N.Y. 2025) ("The question of what constitutes the principal place of business is one of fact . . . . Central to this determination is where the debtor makes its major business decisions, for this constitutes the principal place of business of a debtor, notwithstanding the physical location of its assets or production . . . . Thus, the principal place of business of a corporate debtor is primarily the place whence general supervision is given.") (quoting *In re Suzanne de Lyon, Inc.*, 125 B.R. 863, 867 (Bankr. S.D.N.Y. 1991)).

Indeed, nothing about this notion is particularly new. To the contrary, and going as far back as proceedings under the Bankruptcy Act, courts have recognized that:

> Allowing venue in the district where a debtor manages its business is particularly appropriate in both Chapter X and XI cases. A corporate arrangement or reorganization is primarily a financial proceeding. The debtor is maintained as a going enterprise and its finances are put back in order. Where the corporation transacts its corporate business is a logical place for venue in such proceedings.

*In re Commonwealth Oil Refin. Co.*, 596 F.2d 1239, 1246 (5th Cir. 1979) (citing Note, 52 N.Y.U.L.Rev. 362, 362 n.5 (1977)).

Even the Supreme Court has acknowledged—albeit in the prism of a different statutory scheme—that a home office often qualifies as a "principal place" of business, with the verbiage standing in important contrast to that of "principal office." *See, e.g.*, *Commissioner v. Soliman*, 506 U.S. 168, 174 (1993) ("The statute does not refer to the 'principal office' of the business. If it had used that phrase, the taxpayer's deduction claim would turn on other considerations. The

7

statute refers instead to the 'principal place' of business. It follows that the most important or significant place for the business must be determined.").

Here, PSC is—and always has been—a Maryland-centric entity. Not only is PSC a Maryland limited liability company, but PSC is managed by individuals resident in Baltimore and is now under the helm of a chief restructuring officer in Baltimore. None of which would matter for Jenk's (a separate entity), but for the fact that PSC took back control of Jenk's, from Mr. Kulick, pre-petition. This initially manifested in the form of principals of PSC operating Jenk's financial affairs from Maryland. Ultimately, this also manifested in a Baltimore-based chief restructuring officer being charged with control of Jenk's, at the behest of PSC.

The *Granader* holding is instructive in assessing the impact of that management coming from within a remote locale. There, the Seventh Circuit confronted a 400-unit apartment building in Texas, *Granader*, 150 F.3d at 789, being managed by a company in California, *id.* at 790, where the debtor's derivative equity interests made decisions from within Chicago or a nearby Illinois community, *id.* at 791. Those decisions were macro-level considerations, including how to address the interests of creditors pre-petition. *Id.* Yet the sole asset—the apartment building—remained in Texas, and was being managed almost solely from within Texas and by one or more persons in California. *Id.*

With those facts, "the bankruptcy court found that Peachtree's principal place of business was located in the Northern District of Illinois because it was there that the debtor's significant business decisions during the venue period were made." *Id.* at 791-92 (citing *In re Peachtree Lane Assocs.*, 198 B.R. 272, 281-83 (Bankr. N.D. Ill. 1996)). And the Seventh Circuit upheld that ruling, finding that "Peachtree's Chapter 11 proceeding was properly filed in the Northern District of Illinois." *Granader*, 150 F.3d at 797.

8

Jenk's is markedly analogous. Just as with *Granader*, the apartment building is in one locale (here, the Northern District of Oklahoma).[2] The management company for the Property appears to be in a different district (though it is less-than-clear where that is as of present). And the significant business decisions are made from within Baltimore, which is, of course, in the District of Maryland. *See* 28 U.S.C. § 100(1). In analyzing these three disparate locales, it becomes clear that the Northern District of Oklahoma may be the principal locale of the Debtor's assets, but the District of Maryland is the Debtor's principal place of business.

### IV.    Argument: Venue Should not be Transferred

While the plethora of victims of YSA seeking chapter 11 relief admittedly creates an unorthodox construct, nothing about that reality ultimately alters the simple truism that an entity affiliated with a Maryland debtor, and with a principal place of business in Maryland, ought to be permitted to reorganize in its chosen venue of Maryland. Jenk's had the right to petition for relief in this Honorable Court, has been able to capably navigate its case here thus far, and ought not be compelled to pay homage to Horace Greeley by going west to Oklahoma or Texas.

As observed by the United States Bankruptcy Court for the Southern District of New York, in what was, at the time, the largest bankruptcy case in American history: "A debtor's choice of forum is entitled to great weight if venue is proper." *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) (citing *In re Ocean Properties of Delaware, Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988); *In re Windtech*, 73 B.R. 448 (Bankr. D. Conn. 1987)). *See also In re Caesars Entm't Operating Co.*, 2015 Bankr. LEXIS 314, at \*24 (Bankr. D. Del. Feb. 2, 2015) ("Courts have consistently commented that the debtor's choice of forum is entitled to a certain level of deference

---

[2] Tulsa County—in which the Property is located—is situated in the Northern District of Oklahoma. *See* 28 U.S.C. § 116(a).

if venue is proper under Section 1408.") (citing *Enron*, 274 B.R. at 342; *In re Patriot Coal Corp.*, 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012); *In re Rehoboth Hospitality, LP*, 2011 Bankr. LEXIS 3992 (Bankr. D. Del. Oct. 19, 2011)).

The *Enron* Court and this Honorable Court have both looked to the same non-exhaustive, disjunctive six factor test for assessing a proposed change of venue:

> Transferring venue is within the sound discretion of the bankruptcy court and should be exercised with caution. This exercise requires the Court to consider the following factors: (1) proximity of creditors to the Court; (2) proximity of the Debtor to the Court; (3) proximity of witnesses necessary to the administration of the estate; (4) location of estate assets; (5) economic administration of the estate; and (6) whether ancillary administration will be necessary.

*In re Stony Brook Dev., LLC*, 2006 Bankr. LEXIS 4246, at *5-6 (Bankr. D. Md. Sep. 8, 2006) (Lipp, J.) (citing *In re Ridgely Comm., Inc.*, 107 B.R. 72, 78 (Bankr. D. Md. 1989) (citing *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc.*, 596 F. 2d 1239, 1247 (5th Cir. 1979))). See also *Enron*, 274 B.R. at 343 (applying same factors and citing to Commonwealth Oil Refining).

Here, the largest creditor of Jenk's is a disputed creditor: YSA. Yet even assuming, *arguendo*, YSA is to be considered for venue-centric purposes, it appears YSA is a Delaware limited liability company under the control of a bona fide domiciliary of the State of Florida. Delaware is a short, 70 mile jaunt up I-95. South Florida is a relatively short flight from Baltimore. Other creditors of Jenk's include (i) Berkadia Commercial Mortgage LLC, an entity based in Pennsylvania and administering a loan backed by the Department of Housing and Urban Development (based in Washington, DC); (ii) Costar, an entity based in the Eastern District of Virginia; (iii) Kahn Berman Solomon Taibel & Mogol, P.A., an accounting firm in Maryland; and (iv) various trade creditors in Oklahoma.

10

Considering the second factor: the Debtor is, as discussed above, situated in Baltimore. While the Debtor's major asset (disputed as such may be) is located in Oklahoma, the Debtor's management is in Maryland and the Debtor's parent company is reorganizing in Maryland. This is the "home court" for Jenk's and there is good reason Jenk's elected to pursue reorganization at home.

In terms of witnesses, it seems individuals are situated throughout the United States. Critical agents of Jenk's and PSC are in Baltimore. As noted above, the principal of YSA is believed to be in Florida. Mr. Kulick is in either Oklahoma or Texas. The Debtor's chief restructuring officer is in Baltimore. The first position lienholder on the Property is backstopped by a program of the federal government, situated in the District of Columbia.

The assets of the estate present a somewhat circuitous question. On one hand, Jenk's maintains it has never lost the Property. If true, then the estate's assets are chiefly in Oklahoma. But, equally, if this is true, there is *de minimis* need for reorganization beyond recognizing this reality. On the other hand, if—as urged by YSA—the Property was lost pre-petition, then the assets of Jenk's as of the petition date are primarily comprised of a retainer in the trust account of undersigned proposed general reorganization counsel.[3] That account is maintained at Middletown Valley Bank, a Maryland-chartered bank that has eight branches in Maryland and one branch in Pennsylvania.

Economic administration of the estate also favors Maryland. As discussed *passim*, the Debtor's chief restructuring officer and other principals are all located in Baltimore. The senior lienholder is in Pennsylvania with a guarantor (the federal government) in the District of Columbia.

---

[3] Chapter 5 claims would, of course, have accrued upon the filing of the case and not existed pre-petition.

11

Undersigned proposed counsel resides in rural Maine but maintains a regular legal practice in Maryland. Proposed special litigation counsel is based in Maryland. YSA's bankruptcy counsel (in this case) maintains his office in Maryland. There are three major airports within close proximity to this Honorable Court and this is an efficient locale for the administration of the Main Case and the Adversary Proceeding.

This leaves the question of "whether ancillary administration will be necessary." This factor contemplates what is necessary "in the event that liquidation occurs." *Commonwealth Oil Refining*, 596 F.2d at 1248. Plainly, such is inapplicable *sub judice*: Jenk's believes it will regain possession of the Property (whether through declaration ownership was never lost or through avoidance of said loss), in which case there is little question but that reorganization will prove successful. And the TRO makes clear that Jenk's has a probability of success on the merits, at least in connection with one of the avoidance actions. But even if Jenk's were to ultimately prove unsuccessful, there would be no need for ancillary administration of a liquidation: the only remaining asset would be a retainer held by counsel and, to the extent not fully depleted at that juncture (a far-fetched notion given the nature of the Main Case and the Adversary Proceeding), the retainer would be a cash asset readily distributable to creditors through a chapter 7 liquidation.

Insofar as there is also an allowance for additional considerations under *Ridgely Comm.*, it bears notation that the Adversary Proceeding in this case is not the same as the ones being mounted by other victims of YSA. While there is, no doubt, the commonality of using chapter 5 claims (though even those claims appear to want for uniformity in the various cases), Jenk's is somewhat unique in building much of its case on the lack of authority of Mr. Kulick to undertake certain transactions in the first instance. Jenk's is also potentially unique in having never received *any* consideration from the loans putatively secured by the Property. And Jenk's is further unique in

being under the pre-petition management of PSC followed by a chief restructuring officer, neither of whom suffer the ethos-centric faults of YSA, Mr. Kulick, or the other colorful figures that have visited the cases in Texas, Oklahoma and Delaware.

To be sure, there is not a risk of inconsistent rulings if the Adversary Proceeding and Main Case remain in this Honorable Court, even if other matters are consolidated elsewhere. It very much appears the relationship between PSC and Mr. Kulick's entities is unique amongst the various YSA-victimized debtors, and it thusly also well appears the facts of the Adversary Proceeding—especially insofar as they touch upon the lack of authority to pledge the Property, let alone self-deed the Property—are *sui generis*. And while there is, no doubt, some commonality with other cases vis a vis the avoidance actions, that commonality is markedly more generic: there is scant concern of inconsistent rulings amongst courts asked to avoid transactions made for little-to-no-value at a time when a debtor putatively owed more than $900 million and had only a single building—of palpably lesser value—to its name.

In short, *none* of the factors tip in favor of transferring venue unless one accepts that Jenk's still owns the Property and, as such, has its largest asset in the Northern District of Oklahoma. The Debtor would, of course, be delighted to see this Honorable Court enter an order noting that Jenk's is the rightful owner of the Property and, as such, has an indelible tie to the venue of a sister court. But Jenk's also appreciates such is not likely to happen at this stage of the proceedings and, as such, Maryland shall remain the only sensible venue for these two matters.

### V.   Conclusion

WHEREFORE, Jenk's respectfully prays this Honorable Court retain the Main Case and the Adversary Proceeding, and for such other and further relief as may be just and proper.

*[Signature on Following Page]*

13

Respectfully submitted,

Dated: August 12, 2026        By:   /s/ Maurice B. VerStandig
                                    Maurice B. VerStandig, Esq.
                                    Bar No. MD18071
                                    The VerStandig Law Firm, LLC
                                    9812 Falls Road
                                    #114-160
                                    Potomac, Maryland 20854
                                    (301) 444-4600
                                    mac@mbvesq.com
                                    *Proposed Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of August, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

14